Filed 10/27/14  Mel-Jen, Inc. v. Bank of America CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MEL-JEN, INC., | B252165 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC119922) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Allan J. Goodman, Judge. Affirmed.

Burton V. McCullough for Plaintiff and Appellant.

Jan T. Chilton for Defendant and Respondent.

_____

Appellant Mel-Jen, Inc. doing business as Wally's Wine and Spirits (Mel-Jen) appeals from the judgment of dismissal entered upon the trial court's order sustaining the respondent Bank of America, N.A.'s (BofA) demurrer without leave to amend Mel-Jen's complaint. Before this court, Mel-Jen asserts that the trial court erred in dismissing its sole claim of negligence. As we shall explain, the court did not err by sustaining BofA's demurrer and dismissing Mel-Jen's negligence claim. Moreover, it does not appear that affording Mel-Jen an opportunity to amend could cure the defects in its cause of action against BofA. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Mel-Jen's First Amended Complaint alleges that Mel-Jen is a California corporation doing business as Wally's Wine and Spirits with its principal location in Los Angeles, California. It further alleges that Adilia Bermudez, Mel-Jen's employee and accounting controller, forged approximately 185 handwritten checks totaling $4,692,376.75 on Mel-Jen's checking account between August 2009 and June 2012. Bermudez stole checks for Mel-Jen's checking account and handwrote them payable to "CASH" forging the signature of Steven A. Wallace, the president and CEO of Mel-Jen and an authorized signer on the account. Bermudez did not have signing authority on the account. Bermudez placed notations in the left hand corner of many of the checks reading "reimb.," "exp. reimb.," "wine purch.," and "wine purch. reimb." Bermudez, and occasionally her husband, would bring the checks into the Canyon Plaza Branch of BofA in Sun Valley, California, endorse the checks, and have them deposited into Bermudez and her husband's personal joint checking account. Bermudez also had her monthly salary directly deposited into her joint checking account, and had done so for years prior to creating the forged checks.

In addition to forging checks from Mel-Jen's corporate checking account, Bermudez also forged two checks on president and CEO Steven A. Wallace's personal checking account, making both checks payable to the order of "CASH" and writing the notation "loan" in the memo line on the checks. These two checks were endorsed by Bermudez's husband and deposited into their joint checking account at BofA. BofA

2

presented each of the checks to The Private Bank of California (PBOC), where both Mel-Jen and Wallace maintained checking accounts, and PBOC paid the checks and charged the amounts against Mel-Jen's and Wallace's accounts.

Mel-Jen sued BofA on a sole claim of negligence.[1] In its First Amended Complaint, Mel-Jen claims that the circumstances surrounding Bermudez's transactions at BofA were sufficiently suspicious as to warrant an investigation. Mel-Jen alleges that BofA's failure to investigate makes it liable to Mel-Jen for negligence. BofA filed a demurrer to the negligence claim, and the trial court sustained the demurrer without leave to amend and entered an order dismissing Mel-Jen's complaint.[2] This appeal followed.

## DISCUSSION

### I. The Court Properly Sustained the Demurrer to Mel-Jen's Cause of Action for Negligence.

Mel-Jen asserts that the trial court erred in sustaining BofA's demurrer. Mel-Jen argues that it may assert a common law negligence cause of action against BofA under the principles articulated in *Sun 'n Sand v. United California Bank* (1978) 21 Cal.3d 671. As we shall explain, in view of the circumstances of this case, Mel-Jen does not have claims against BofA under the Commercial Code or pursuant to the circumscribed

---

[1] Mel-Jen's complaint also contained causes of action against its bank, PBOC, alleging claims for violation of Commercial Code section 4401 [unauthorized withdrawals], and common law claims for negligence, misrepresentation, breach of fiduciary duty and the duty to act in good faith, and unjust enrichment.

[2] PBOC filed a demurrer to the complaint. The trial court sustained the demurrer without leave to amend as to the common law causes of action, finding that the Commercial Code section 4401 "displaces the common law claims" and was intended to be the "exclusive means for determining the rights, duties and liabilities" of the affected parties in the case. The trial court also granted PBOC's motion to strike portions of the complaint—specifically certain factual allegations in the Commercial Code section 4401 cause of action which pertained to the unauthorized withdrawals that fell outside the statute of limitations period contained in Commercial Code section 4406. The court required Mel-Jen to file a second amended complaint against PBOC alleging a violation of Commercial Code section 4401 consistent with the court's rulings.

holding of *Sun 'n Sand*.  Therefore, the trial court properly sustained BofA's demurrer to Mel-Jen's cause of action for negligence.

### A.      Standard of Review

When a party files a demurrer, the court considers the sufficiency of the plaintiff's claims as a matter of law.  (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43-44.)  At the appellate level, we review *de novo* the ruling on a demurrer, exercising our independent judgment to determine whether a cause of action has been stated.  (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300; *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.)  "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  We also consider matters which may be judicially noticed.'  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "We do not, however, assume the truth of the legal contentions, deductions or conclusions.  [Q]uestions of law . . . are reviewed de novo." (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373.)

When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  (*Trader Sports, Inc. v. City of San Leandro*, *supra*, 93 Cal.App.4th at pp. 43-44.)  If no liability exists as a matter of law, we must affirm the judgment.  (*Ibid*.)  The appellant bears the burden of proving the trial court erred in sustaining the demurrer.  (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318; *Coutin v. Lucas* (1990) 220 Cal.App.3d 1016, 1020.)

### B.      Analysis

In general, a bank does not owe a duty of care to noncustomers.  (*Rodriguez v. Bank of The West* (2008) 162 Cal.App.4th 454, 460.) "A bank's duty of care—to act with reasonable care in its transactions with its customers—arises out of the bank's contract with its customer," and thus banks generally do not owe a duty of care to others.  (*Ibid*.) "[A]bsent extraordinary and specific facts, a bank does not owe a duty of care to a

4

noncustomer." (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 479.)

The Commercial Code provides a comprehensive statutory scheme for allocating losses resulting from fraudulent financial instruments such as checks. Commercial Code section 3405 addresses fraudulent endorsements and allocates responsibility for any losses resulting from such endorsements between the account holder (whose endorsement was forged) and the bank (i.e. collecting bank). (Cal. U. Com. Code, § 3405.) Commercial Code sections 4401 and 4406 address fraudulent bank account holder signatures and liability for unauthorized withdrawals; these statutes allocate responsibility for any losses resulting from an unauthorized or altered signature between the account holder and his or her bank (i.e., the payor bank). (Cal. U. Com. Code, §§ 4401 and 4406.) The loss distribution scheme in the Commercial Code displaces nearly all common law claims against financial institutions like BofA. Mel-Jen properly concedes that these statutes do not apply to its claims against BofA. It, nonetheless, asserts it may maintain a common law negligence claim against BofA, notwithstanding the Commercial Code and notwithstanding the general rule that BofA owes no duties to a non-customer, like Mel-Jen.

In arguing that it can maintain a common law negligence claim against BofA, Mel-Jen relies on the Supreme Court's decision in *Sun'n Sand,* which found a bank liable for negligence to a noncustomer. In *Sun 'n Sand*, an employee told her supervisor that the company owed minor amounts of money to the bank and requested the supervisor write checks payable to the bank. (*Sun 'n Sand v. United California Bank, supra,* 21 Cal.3d at p. 678.) The employee then altered the checks to increase the amounts and had the checks deposited into her personal account at the same bank. (*Ibid*.) The bank deposited the checks even though they were made payable to the bank itself and not the employee. (*Ibid*.) The Court held that the bank had a duty of care to the noncustomer company. (*Id*. at p. 695.) However, the Court specifically noted that the "duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are

5

drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Ibid*.)

It is clear that the facts alleged by Mel-Jen do not fit within *Sun 'n Sand*'s narrow holding, nor do the facts fit within any of the additional exceptions created by post-*Sun 'n Sand* case law. [3]

Cases after *Sun 'n Sand* that have recognized new exceptions to the general rule have only done so when the transactions were suspicious on their face because "the person attempting to negotiate the check is not the payee." (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, *supra*, 49 Cal.App.4th at pp. 480-481.)  For example, in *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541, the court held that the transaction was sufficiently suspicious to justify a duty of care when a company named "Continental" attempted to deposit a check made payable to "Continental Finance Systems-Wells Fargo Escrow Trust Account" into its account at Bank of America.  The court reasoned that "the face of the check itself [did] not provide sufficient 'objective indicia from which the bank could reasonably conclude that the party presenting the check [was] authorized to transact in the manner proposed.'" (*Id*. at p. 556.)

Similarly, in *E. F. Hutton & Co. v. City National Bank* (1983) 149 Cal.App.3d 60, the court held that the plaintiff alleged facts sufficient to state a cause of action for negligence when an employee presented checks made payable to 18 different named individual payees to a bank, which then accepted the checks and deposited them into the employee's personal account.  The court based its decision on the fact that the checks

---

[3]     The parties dispute whether the *Sun 'n Sand* case is even precedential authority. We recognize that courts have questioned the precedential authority of *Sun 'n Sand*'s holding on the negligence claim because although "all five of the justices who considered the case agreed that the negligence causes of action could proceed," only two justices signed onto the reasoning of the majority opinion. (*Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1069, fn. 18; accord: *Mac v. Bank of America* (1999) 76 Cal.App.4th 562, 565, fn. 1.)  However, we need not reach that issue because even assuming that *Sun 'n Sand* is precedential authority, the facts Mel-Jen alleges do not fit within the specifically narrow exception articulated in *Sun 'n Sand.*

"were for a substantial amount, payable to individual payees at another bank, with inadequate indicia on the face of the checks...regarding the authorization of [the plaintiff] . . . to negotiate the instruments." (*Id*. at p. 68.)

Here, unlike the transactions in *Joffe* and *E. F. Hutton*, Bermudez's transactions were not suspicious on their face. There is no evidence that any aspect of the checks was filled out incorrectly, and there was nothing on the face of the checks that would have alerted BofA to the potential for fraud. Moreover, in both *Joffe* and *E. F. Hutton*, the checks were made payable to a third party who was not physically present for the transaction, whereas here, the checks were made payable to "CASH." A check made payable to "CASH" is "bearer paper" and the person in physical possession of bearer paper is presumed to own it. (Com. Code, § 3109, subd. (a)(3); *Bank of California v. J.L. Mott Iron Works* (1896) 113 Cal. 409, 412.) Therefore, when a check made payable to "CASH" is brought in for deposit, the bank pays the named payee when they pay the person in possession of the check.

Moreover, cases since *Sun 'n Sand* have declined to impose a duty on banks to investigate suspicious circumstances surrounding the transactions when the transactions were not suspicious on their face. For example, in *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., supra,* 49 Cal.App.4th 472, a financial consultant hired to manage the plaintiffs' investments opened two brokerage accounts in the name of a fictitious partnership, deposited the plaintiffs' money into the accounts, and then stole the money by transferring it into other bank accounts. The plaintiffs argued that the frequency and the large amount of money deposited and withdrawn from the accounts was an indication of illegal activity. (*Id*. at p. 481.) However, the court found no duty on the part of the bank to investigate noting that there is "no authority for the proposition that, in the absence of suspicious *instruments*, a bank has a duty to supervise account activity or otherwise track frequent and/or large dollar transactions in deposit accounts." (*Ibid*.)

Like *Software Design*, the suspicious activity Mel-Jen alleges occurred here was not apparent from the face of the checks themselves. Nonetheless, Mel-Jen argues that

7

the surrounding circumstances of the transactions were sufficiently suspicious so that BofA had a duty to investigate. Mel-Jen cites the fact that the amount of money Bermudez deposited from the checks greatly exceeded the amounts of her direct deposit paychecks, and that it is unusual for an employee to make large company purchases that require later reimbursement from the company. Mel-Jen, however, has no legal authority which would impose a duty on a bank to investigate suspicious surrounding circumstances when the checks are not facially suspicious and current case law does not support Mel-Jen's argument. Moreover, we decline to recognize a new duty of care based on the factual situation alleged in Mel-Jen's complaint.

Finally in reaching our conclusion we observe, as noted elsewhere here, that Mel-Jen is not without a potential remedy for the harm that it has suffered as a result of Bermudez's conduct. The trial court allowed Mel-Jen to proceed on its Commercial Code section 4401 claim against its bank, PBOC, for the unauthorized withdrawals from its account. Accordingly, the trial court properly sustained the demurrer on Mel-Gen's common law negligence claim against BofA.

## II. The Court Did Not Abuse Its Discretion in Failing to Grant Mel-Jen an Opportunity to Amend Its Complaint

The trial court's ruling sustaining a demurrer is subject to a standard of review in which "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, quoting *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) "[W]hen a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Ibid*.) If the defect can be cured, "the trial court has abused its discretion and we reverse." (*Ibid*.) However, if the defect cannot be cured, "there has been no abuse of discretion and we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.)

Mel-Jen has not suggested on appeal how it might amend its complaint to state a valid cause of action against BofA. (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["The burden of showing that a reasonable possibility

8

exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint"].)  Consequently, because Mel-Jen has not identified any other possible factual scenario or plausible legal theory to revive its negligence claim against BofA, we conclude the failings in Mel-Jen's claim cannot be cured by amendment and thus the court did not abuse its discretion when it did not give Mel-Jen another opportunity to amend its complaint.

## *DISPOSITION*

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


**WOODS, J.**


**We concur:**


**PERLUSS, P. J.**                                    **ZELON, J.**


9